UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JACKIE DON ROBERTS and
VICKIE MAE ROBERTS,　　　　　　　　　　　Case No. 18-11927-t11

　　　　Debtors.

## OPINION

Before the Court is the Debtors' motion to convert this case to a chapter 12 case. Jennie D. Behles filed a limited objection to the motion, arguing that administrative expense claimants should be given notice of the motion and also that the Court must ensure conversion is equitable to those claimants. Being sufficiently advised, the Court concludes that Debtors gave sufficient notice of the motion and that administrative expense claimants would benefit from the proposed conversion. The motion therefore will be granted.

## I.　　FACTS

The Court finds:[1]

Debtors have farmed in Curry County, New Mexico for about forty years. They filed this chapter 11 case in July 2018. On the petition date Debtors filed an application to employ the law firm B.L.F., LLC as their bankruptcy counsel.

Debtors' bankruptcy schedules disclosed more than $4.9 million in debt.[2] Thus, although they are farmers, Debtors could not file a chapter 12 case because § 101(18)[3] defined family

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[2] Filed claims in the case total $6,183,447.72.
[3] Statutory references are to 11 U.S.C.

farmers as an "individual and spouse engaged in a farming operation whose aggregate debts do not exceed $4,153,150."[4]

The case was contentious. Debtors and their main secured creditor, Production Credit Association of Southern New Mexico ("PCA"), were at odds from the beginning.[5] PCA vigorously contested Debtors' use of cash collateral, objected to Debtor's employment applications, filed several notices of default, filed two stay relief motions, filed several requests for sanctions, and otherwise aggressively fought Debtors' reorganization efforts. Debtors, for their part, took aggressive positions contrary to PCA's interest, filed an adversary proceeding seeking to "write down" PCA's secured claim, and filed a plan that would have, if confirmed, resulted in a significant loss to PCA. Litigation between the parties required several discovery hearings and an award of sanctions.

Professional fees mounted as the case went on, including the fees and expenses charged by BLF, LLC. Further, Debtors were forced to retain new counsel in March 2019, due to Ms. Behles' disbarment.[6]

Debtors filed a chapter 11 plan and disclosure statement in March 2019. Several creditors, including PCA, objected to the draft disclosure statement, arguing that it was unclear, garbled, filled with errors, and confusing. The plan and disclosure statement certainly appeared to have significant deficiencies.

---

[4] When chapter 12 was created in 1986, the debt limited was $3,237,000. The limit increased over the years to $4,153,150 pursuant to the cost-of-living adjustments set out in 11 U.S.C. § 104.
[5] PCA filed proofs of claim totaling $4,896,000, secured by real estate, equipment, water rights, crops, cattle, and proceeds.
[6] After Debtors changed counsel, BLF, LLC assigned its attorney fee claim to Ms. Behles, its sole owner. On July 5, 2019, Ms. Behles filed a fee application seeking approval of $113,615.02 in fees and $3,164.85 in expenses. Debtors and the United States Trustee's office objected. The parties have agreed to mediate the dispute.

On August 12, 2019, Debtors' new counsel filed an amended chapter 11 plan and disclosure statement. Again PCA and others objected to the disclosure statement. PCA, which filed the most comprehensive objection, cited several purported inaccuracies and misleading statements made by the Debtors regarding their assets, liabilities, and current and projected income.

In addition to potential disclosure statement deficiencies, Debtor's amended plan did not propose to pay unsecured creditors in full. Thus, without unsecured creditor support the plan had an absolute priority problem.[7] As the plan proposed to bifurcate PCA's claim and pay its unsecured portion substantially less than 100%, confirmation appeared to be an uphill battle. The main alternative, liquidation, likely would not pay administrative expenses in full.

On August 23, 2019, the "Family Farmer Relief Act of 2019" raised the debt limit in § 101(18) to $10 million. Pub. L. No. 116-51, 133 Stat. 1075. This change in the law gave Debtors, suddenly eligible for chapter 12 relief, additional bargaining leverage. On October 1, 2019, during a hearing on Debtors' amended disclosure statement, Debtors and PCA agreed to mediate their disputes. Chief bankruptcy judge Robert Jacobvitz consented to serve as the mediator. He conducted the mediation on October 25, 2019. Over the course of a long day, and with much hard work by Judge Jacobvitz and the parties, a settlement was reached. Among other things, the settlement agreement provides that Debtors will convert this case to chapter 12.

---

[7] When presented with creditors' legitimate objections, the Court cannot confirm a chapter 11 plan that does not comport with the "absolute priority rule" of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988). The absolute priority rule, codified in § 1129(b)(2)(B)(ii) prohibits confirmation of a plan that is not fair and equitable—meaning, in relevant part, "the holder of any claim or interest that is junior to the claims of [unsecured creditors] will not receive or retain under the plan on account of such junior claim or interest any property[.]" *See Ahlers*, 485 U.S. at 202 (summarizing the absolute priority rule as "provid[ing] that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan"; and recognizing that "a reorganization plan in which [the debtors] retain an equity interest in the[ir] farm is contrary to the absolute priority rule.")

Debtors filed the motion to convert and a notice of deadline to object on October 28, 2019. On the same day Debtors served the motion and notice electronically and mailed them to the current mailing matrix.

The only objection to the motion was filed by Ms. Behles. Although her arguments are not easy to parse, they appear to be:

- The motion was not appropriately noticed because it was not sent to administrative expense claimants;
- It would be inequitable to convert the case because some administrative expense claimants might have their claims converted to pre-petition claims; and
- At a minimum, the Court should condition conversion on ensuring that no administrative expense claims would be prejudiced.

## II. DISCUSSION

A.  Conversion from Chapter 11 to Chapter 12.

§ 1112(d) provides:

The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if—
    (1) the debtor requests such conversion;
    (2) the debtor has not been discharged under section 1141(d) of this title; and
    (3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable.

§ 1112(f) provides:

Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

B.  Debtors Are Eligible to be Chapter 12 Debtors.

An initial issue is whether Debtors can take advantage of the new chapter 12 debt limit. When chapter 12 was enacted in 1986, the legislation included the following:

(c) Amendments Relating to Family Farmers—(1) The amendments made by subtitle B of Title II shall not apply with respect to cases commenced under Title 11 of the United States Code before the effective date of this Act.

-4-
Case 18-11927-t12    Doc 409    Filed 12/19/19    Entered 12/19/19 10:23:33 Page 4 of 9

Public Law 99-554, § 302(c). This provision barred conversion of a pending chapter 11 case to chapter 12. *See In re B.A.V. Inc.*, 68 B.R. 411, 413 (Bankr. D. Colo. 1986) (the court denied debtor's motion to convert from chapter 11 to chapter 12 because their case was pending when the law went into effect).

There is no similar provision in the 2019 Act, which provides in its entirety:

> Section 1. Short Title.
>     This Act may be cited as the "Family Farmer Relief Act of 2019."
> Sec. 2 Definition of Family Farmer.
>     Section 101(18) of title 11, United States Code, is amended by striking "3,237,000" each place that term appears and inserting "$10,000,000".
> Sec. 3. Determination of Budgetary Effects.
>     The budgetary effects of this Act, for the purpose of complying with the Statutory Pay-As-You-Go Act of 2010, shall be determined by reference to the latest statement titled "Budgetary Effects of PAYGO Legislation" for this Act, submitted for printing in the Congressional Record by the Chairman of the House Budget Committee, provided that such statement has been submitted prior to the vote on passage.

Thus, after August 23, 2019, the definition of "family farmer" included individuals, like Debtors, with less than $10,000,000 in aggregate debt. Unlike the 1986 legislation, there is no prohibition against converting a pending chapter 11 case to chapter 12.

C.      Notice of the Motion to Convert was Adequate.

Ms. Behles argues that post-petition administrative claimants were not given proper notice of the motion to convert and might not be bound by a conversion order or subsequent proceedings in chapter 12. The argument must be overruled. Fed. R. Bankr. Pro. 2002(a) provides in part:

> (a) Twenty-one-day notices to parties in interest
>
> Except as provided in subdivisions (h), (i), (l), (p), and (q) of this rule, the clerk, or some other person as the court may direct, shall give *the debtor, the trustee, all creditors and indenture trustees* at least 21 days' notice by mail of:
> . . .

(4) in a chapter 7 liquidation, a chapter 11 reorganization case, or a chapter 12 family farmer debt adjustment case, the hearing on the dismissal of the case or the conversion of the case to another chapter, unless the hearing is under § 707(a)(3) or § 707(b) or is on dismissal of the case for failure to pay the filing fee;

(emphasis added). Debtors gave the notice required by this rule. There was no requirement that Debtors give administrative claimants notice of the motion to convert because they are not "creditors." Section 101(10) defines "creditor" as:

(A) [an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) [an] entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) . . .; [or]

(C) [an] entity that has a community claim.

Administrative claimants do not come within this definition. *See, e.g., In re Indus. Commercial Elec., Inc.*, 319 B.R. 35, 42 n. 4 (D. Mass. 2005) ("in bankruptcy law the term 'creditors' does not include administrative claimants"); *In re Nunzio's Pizza, Inc.*, 202 B.R. 159, 161 (Bankr. D.N.M. 1996) ("administrative claimants are not creditors"); *In re Dyac Corp.*, 164 B.R. 574, 578 (D. N.D. Ohio 1994) (an administrative claimant is not a creditor entitled to notice of conversion from chapter 11 to chapter 13). Thus, notice to administrative claimants was not required in this instance. *Dyac,* 164 B.R. at 578.[8]

D.  Chapter 11 Administrative Expense Claims Would Not be Treated as Pre-Petition Claims.

---

[8] Furthermore, there are practical problems with requiring notice to administrative expense claimants, viz., that their names and addresses are not readily ascertainable. While Debtors may know who all of their administrative expense claimants are, other parties in interest do not. Because non-debtor parties also need to give notice in bankruptcy cases and must rely on the official mailing matrix, it would cause significant problems if they were required to notice administrative expense claimants.

Ms. Behles is concerned that some chapter 11 administrative expense claimants could have their claims treated like pre-petition claims if the motion is granted. She points to § 348(d):

> (d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

This concern is unfounded. Almost all claims that arise post-petition are administrative expense claims under § 503(b), and so are excepted from § 348(d). Examples of the types of claims that are <u>not</u> administrative expense claims include claims arising between an involuntary petition date and the entry of the order for relief; claims arising from the rejection of executory contracts; certain obscure tax claims; and post-confirmation claims. *See generally* 3 Collier on Bankruptcy ¶ 348.05[2] (16th ed.) (discussing the limited post-petition claims that are not administrative expense claims); *see also In re Fowler*, 394 F.3d 1208, 1213 (9th Cir. 2005) (§ 348(d) preserves administrative expense status upon conversion of a case from chapter 11 to chapter 13); *In re Toms*, 229 B.R. 646, 652 (Bankr. E.D. Pa. 1999) ("administrative claims (including awards of counsel fees) are not treated as claims arising prepetition. . . upon conversion"). To the Court's knowledge, conversion would not cause any allowed administrative expense claims to be treated as pre-petition claims.

E.     <u>Chapter 11 Administrative Expenses Would Not be Subordinated</u>.

Furthermore, conversion would not subordinate chapter 11 administrative claims. It is true that when a chapter 11, 12, or 13 case is converted to chapter 7, the prior administrative expenses are subordinated to chapter 7 administrative claims. Section 726(b) provides:

> (b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), or (10) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been

converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

"[A]dministrative claims arising from a [c]hapter 11 case are, after conversion, subordinate to administrative claims arising from [a] subsequent [c]hapter 7 case." *In re Lochmiller Indus., Inc.*, 178 B.R. 241, 246 (Bankr. S.D. Cal. 1995). The policy behind this principle is "simple: 'Those who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate.'" *Id.* (quoting congressional session notes).

The outcome is different when a chapter 11 case is converted to chapter 12. Under § 1222(a)(2), a chapter 12 plan must:

> provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless the holder of a particular claim agrees to a different treatment of that claim . . . .

Administrative expenses are included within § 507's priority scheme. Section 507(a)(2) gives second priority to "administrative expenses allowed under section 503(b) of this title." Section 503(b), in turn, provides that

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including
>   (1)(A) the actual, necessary costs and expenses of preserving the estate . . .
>   (2) compensation and reimbursement awarded under section 330(a) of this title;[9]

Thus, in a case converted from chapter 11 to chapter 12 the chapter 12 plan must provide for full payment of all chapter 11 administrative expenses.

---

[9] Section 330 allows the Court to award reasonable compensation to professionals employed by the trustee or debtor in possession.

F.  Conversion Would Be Equitable.

Administrative expense claimants likely would benefit significantly from conversion to chapter 12 and the consummation of the settlement between Debtors and PCA. Before the settlement, Debtors' prospects of confirming a chapter 11 plan were dim. Conversion to chapter 7, in which unsecured creditors and administrative expense claims could receive little or nothing, appeared likely. As part of the settlement between Debtors and PCA, conversion to chapter 12 not only gives Debtors a chance to reorganize but also gives creditors and administrative expense claimants the best chance of getting paid. The Court concludes that the proposed conversion is fair and equitable to all parties.

III.  CONCLUSION

It is critical that adequate notice be given of all important events in a bankruptcy case, including a motion to convert. The Court is satisfied that notice of the motion to convert was adequate in this case. In addition, the Court is required to ensure that conversion to chapter 12 is equitable to the parties in interest, including administrative expense claimants. Here, the proposed conversion is fair and equitable and likely will benefit administrative expense claimants, whose claims will not be subordinated or reduced to pre-petition claims. Given these salients, Debtors' motion to convert is well taken and will be granted by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 19, 2019
Copies to: electric notice recipients