In re:

JACKIE DON ROBERTS and
VICKIE MAE ROBERTS,   Case No. 18-11927-t12

    Debtors.

## **OPINION**

Before the Court is the United States Department of Agriculture-Farm Service Agency's ("FSA's") motion for relief from the automatic stay so it can set off its obligation to make subsidy payments to Debtors with Debtors' obligations to it under a note and mortgage. Debtors object on several grounds and ask instead that the Court order turnover of the subsidy payments. The Court, having heard arguments of counsel and reviewed the pertinent loan and subsidy documents, concludes that setoff is not permitted because FSA's obligation to Debtors arose postpetition while Debtors' obligation to FSA arose prepetition. The prepetition/postpetition nature of the obligations prevents FSA from exercising its setoff rights. FSA's stay relief motion therefore will be denied and Debtors' turnover motion granted.

    I.    FACTS

For the limited purpose of ruling on the stay relief motion, the Court finds:[1]

Debtors borrowed $300,000 from FSA on November 4, 2010. The loan was evidenced by a promissory note signed by the Debtors. The note requires annual payments of $16,014 every

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

January 1 for 40 years. Payment of the note is secured by a mortgage on 49.1 acres of land in De Baca County, New Mexico. The mortgage was recorded November 4, 2010.

Debtors paid the note as agreed through January 2018.

Before 2017, Debtors enrolled in two FSA subsidy programs, a Price Loss Coverage program ("PLC") and a Market Facilitation Program ("MFP"). Under both programs, FSA pays money to farmers like Debtors if certain commodity prices drop below certain specified levels.

Debtors filed this case on July 31, 2018. Originally filed as a chapter 11 case, it was converted to chapter 12 on December 19, 2019.

Debtors did not make the note payments to FSA due in January of 2019 and 2020. The postpetition defaults total $32,028.

Postpetition, Debtors were entitled to receive the following amounts from the PLC and MFP subsidy programs:

| Program | Date Payable | Amount |
| --- | --- | --- |
| PLC | 10/03/2018 | $3,482 |
| MFP | 05/23/2019 | $2,018 |
| PLC | 10/08/2019 | $19,072 |
| PLC | 10/08/2019 | $4,139 |
| PLC | 10/08/2019 | $219 |
| PLC | 10/08/2019 | $112 |
| PLC | 10/08/2019 | $3,226 |
| PLC | 10/08/2019 | $2,047 |
| PLC | 10/08/2019 | $747 |
| PLC | 10/08/2019 | $465 |
| PLC | 10/08/2019 | $689 |
| PLC | 10/08/2019 | $191 |
| PLC | 10/08/2019 | $1,011 |
| PLC | 10/08/2019 | $3,592 |
| Total | | $40,010[2] |

---

[2]Debtors added these figures and arrived at a total of $40,640, which seems slightly off. However, the Court does not intend this opinion to be an accounting; the intent is to deal with the postpetition subsidy payments, whatever they may be.

## II. DISCUSSION

A. Setoff in General.

Judge Peck discussed setoff in *In re Lehman Brothers Holdings Inc.*, 404 B.R. 752 (Bankr. S.D.N.Y. 2009):

> Setoff originated in early Roman law and was later incorporated into the English legal system in 1705. *See* Sepinuck, *The Problems With Setoff: A Proposed Legislative Solution,* 30 Wm. & Mary L. Rev. 51, 51–52 (1988). . . . The central premise of the right of setoff is the adjustment of mutual obligations. "The right of setoff ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) (*quoting Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913)).

404 B.R. at 756. Setoff is best understood as a defense to payment of an otherwise valid obligation. *See, e.g.*, *Copley v. United States (In re Copley)*, __ F.3d __, 2020 WL 2374542 (4th Cir.):

> The "defense of setoff" preserved in the bankruptcy code is precisely that, a defense. . . . It allows a creditor with a valid claim against a bankruptcy debtor to assert the value of that claim as a defense to a demand to pay a separate debt owed to the debtor.

2020 WL 2374542, at *3; *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 20 (1995) ("a defense of setoff"); *In re New Haven Foundry, Inc.*, 285 B.R. 646, 650 (Bankr. E.D. Mich. 2002) (setoff is a defense, not a security interest subject to Article 9 of the UCC); *Genesis Marine, L.L.C. of Delaware v. Hornbeck Offshore Services, L.L.C.*, 951 F.3d 629, 631 (5th Cir. 2020) ("affirmative defenses of setoff and accord and satisfaction"); *see generally In re Quisenberry*, 295 B.R. 855, 859 (Bankr. N.D. Tex. 2003) (setoff is a right, not a lien or security interest); *In re*

*Holder*, 182 B.R. 770, 776 (Bankr. M.D. Tenn. 1995) ("the common law concept of setoff is a right, not a lien").[3]

The United States has the same rights of setoff as a private party. In *United States v. Myers (In re Myers)*, 362 F.3d 667 (10th Cir. 2004), the Tenth Circuit held:

> "[t]he existence of the federal government's general common law setoff right has been well established for over a century." 5 *Collier on Bankruptcy* ¶ 553.04[3].

362 F.3d at 674; *see also United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 239 (1947) (government has the same right of setoff as every other creditor); *In re Chateaugay Corp.*, 94 F.3d 772, 779 (2d Cir. 1996) (government has a common law right of setoff); *United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir. 1986) ("right of setoff is inherent in the U.S. Government"); *Applied Companies v. United States*, 144 F.3d 1470, 1476 (Fed. Cir. 1998) ("it is well settled that the government retains its setoff right unless there is some explicit statutory or contractual provision that bars its exercise").[4]

Setoff is generally waived if not timely asserted as an affirmative defense in litigation.[5] Further, several courts have held that filing a proof of claim without asserting setoff waives any right of offset. *See, e.g., Tavormina v. ITT Commercial Finance Corp (In re Aquasport, Inc.)*, 115 B.R. 720, 721-22 (Bankr. S.D. Fla. 1990), aff'd, 985 F.2d 579 (11th Cir. 1993). In this case, however, FSA filed its proof of claim on September 21, 2018, before Debtors defaulted on the loan

---

[3] Debtors argue that FSA does not have a security interest in the subsidy payment funds. That is correct. FSA has not asserted a security interest in the funds. While a right of offset functions in some ways like a security interest in or lien on intangible property, the two concepts are distinct.
[4] Section 106(c) is a partial waiver of sovereign immunity, allowing the debtor to offset a governmental unit's proof of claim by any valid claim the debtor has against the unit.
[5] *See, e.g., Buder v. United States*, 7 F.3d 1382, 1386 (8th Cir. 1993) (IRS waived setoff defense by not raising it until ten days before trial). *Cf.* 31 U.S.C. § 3728, which allows the United States to assert setoff post-judgment in some cases.

and before they became entitled to receive any of the subsidy payments at issue. There was no waiver.

B.   Setoff in Bankruptcy Cases.

"Setoff became a recognized doctrine of United States bankruptcy law with the passage of the Act of 1800 and is preserved today in section 553 of the Bankruptcy Code." *Lehman Brothers*, 404 B.R. at 756. Section 553 of the Code provides in part:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

The Tenth Circuit held in *In re Commercial Financial Services, Inc.,* 43 Fed. App'x 309 (10th Cir. 2002) (unpublished):

> "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

43 Fed App'x at 311.

Under § 553, the offsetting obligations must have arisen prepetition and must be "mutual." *Lehman Brothers*, 404 B.R. at 757. Mutuality exists when "debts and credits are in the same right and are between the same parties, standing in the same capacity." *Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995). In addition, both offsetting claims must be valid and enforceable. *Clemens v. West Milton State Bank (In re Clemens),* 261 B.R. 602, 605 (M.D. Pa. 2001), citing 5 Collier on Bankruptcy ¶ 553.01[1] (15th ed.).

There is case law holding that the decision to allow setoff is within the sound discretion of the bankruptcy court. *See, e.g., Lehman Bros.,* 404 B.R. at 757 (citing *In re Bennett Funding*

*Group, Inc.*, 146 F.3d 136, 138 (2nd Cir. 1998), and *Bohack Corp. v. Borden, Inc.,* 599 F.2d 1160, 1164 (2d Cir. 1979)). This likely is an overstatement. At the Fourth Circuit recently explained:

> Although bankruptcy courts historically have had discretion to disallow a setoff, *see Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 454-55, 35 S. Ct. 636, 59 L. Ed. 1042 (1915), that discretion always has been limited. *See N.J. Nat'l Bank v. Gutterman (In re Applied Logic Corp.)*, 576 F.2d 952, 957 (2d Cir. 1978) ("The rule allowing setoff ... is not one that courts are free to ignore when they think application would be 'unjust.'"). Indeed, a court's discretion to disallow a setoff generally is confined to those circumstances when the validity of the right of setoff can be questioned under other law outside the bankruptcy code. *See* 5 Collier on Bankruptcy ¶ 553.02[3] (16th ed. 2020) ("[A] right of setoff should be recognized in bankruptcy unless the right is invalid in the first instance under applicable nonbankruptcy law, or unless it is otherwise proscribed by some express provision of the Code."). That discretion does not permit bankruptcy courts to disregard the plain language of 26 U.S.C. § 6402(a) and 11 U.S.C. § 553(a).

*Copley*, 2020 WL 2374542, at *6.

C. <u>Creditors May Not Offset Prepetition Claims Against Postpetition Debts</u>.

By its plain terms, § 553 only allows setoff of "a mutual debt owing by such creditor to the debtor *that arose before the commencement of the case* . . . against a claim of such creditor against the debtor *that arose before the commencement of the case* . . . ."[6] (italics added)

Although not addressed by § 553, courts have held that setoff of mutual postpetition debts generally is permitted. *See, e.g., In re Davidson Lumber Sales, Inc.,* 66 F.3d 1560, 1569 (10th Cir. 1995) ("Despite the Bankruptcy Code's failure to address the situation, courts generally recognize that in appropriate circumstances mutual postpetition debts may be set off"); *see also In re Mohawk Industries, Inc.*, 82 B.R. 174, 178-79 (Bankr. D. Mass. 1987) (same); *Dery v. General Motors Corp. (In re Fordson Eng'g Corp.)*, 25 B.R. 506, 511 (Bankr. E.D. Mich. 1982) (same); *In re Shoppers Paradise, Inc.,* 8 B.R. 271, 277–78 (Bankr. S.D.N.Y. 1980) (same).

---

[6]There probably is not much difference between a claim and a debt when those terms are used to discuss § 553 setoffs. *See* 5 Collier on Bankruptcy ¶ 553.01[1] (general rule is that most types of obligations will qualify as a claim or debt for setoff purposes).

What is not permitted is for a creditor to set off a prepetition claim against a postpetition debt. In *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030 (5th Cir. 1987), the Fifth Circuit held:

> The mutuality element is lacking if a party attempts to setoff a prepetition debt against a postpetition claim. *See Braniff,* 42 B.R. at 449 ("As a general rule, neither a creditor nor a debtor may offset prepetition debts and claims against postpetition debts and claims because of the absence of mutuality of the parties."); *In re Virginia Block Co.,* 16 B.R. 771, 775 (Bankr. W.D. Va. 1982) ("A postpetition debt cannot be set off against a prepetition claim.").

814 F.2d 1036-37. As stated in *Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.)*, 270 F.3d 280 (6th Cir. 2001):

> In Chapter 11 bankruptcy, the debtor files a petition for bankruptcy, becomes a debtor-in-possession, and thus succeeds to a set of statutorily defined powers and duties. The debtor-in-possession is considered to be a separate legal entity from the debtor himself. Since the debtor and the debtor-in-possession are separate legal persons, there is no mutuality between a creditor's prepetition claim against a debtor and a debtor-in-possession's postpetition claim against a creditor. *See Dery v. General Motors Corp.* (*In re Fordson Eng'g Corp.*), 25 B.R. 506, 511 (Bkrtcy. E.D. Mich. 1982) ("for the reason that the debtor in possession is an entity different and distinct from the debtor itself, a postpetition debt can not be set off against a prepetition claim"); *see also Virginia Block Co. v. Virginia Mut. Ins. Agency, Inc.* (*In re Virginia Block Co.*), 16 B.R. 771, 775 (Bankr. W.D. Va. 1982).

270 F.3d at 290; *see also Mohawk Industries*, 82 B.R. at 176 (citing cases, the court ruled that a creditor may not set off the debtor's prepetition obligation to it against its postpetition obligation to the debtor because the obligations lack mutuality); *In re Ruiz,* 146 B.R. 877, 879 (Bankr. S.D. Fla. 1992) (creditor may not set off a prepetition debt by withholding payment of a postpetition debt owed to the debtor); *U.S. v. Holden*, 258 B.R. 323, 327 (D. Vt. 2000) (quoting *Ruiz*); *In re Enright*, 2015 WL 4875483, at *3 (Bankr. D.N.J) (same).

There is no question that FSA's obligation to pay subsidy payments to Debtors arose postpetition. Thus, FSA's right to offset depends on whether Debtors' debt to FSA is pre- or postpetition.

D.  Debtors' Obligation to FSA Arose Prepetition.

> [C]ourts have developed a number of competing tests to determine whether a claim is pre- or postpetition in nature if the proper characterization is not obvious. In most situations, it will not be necessary to resort to these tests to determine whether the particular claim at issue arose before the commencement of the debtor's case because all of the elements of the claim will be clearly pre- or postpetition in nature. On the other hand, certain claims will present ambiguities that may need to be resolved in order to determine the creditors' right of setoff.

5 Collier on Bankruptcy, ¶ 553.03[1][b]. The only ambiguity here arises from Debtors having filed this case seven+ years into a 40-year loan, so that 33 of the annual payments have come or will come due postpetition.

Collier discusses four tests courts have used to decide whether a debt arose pre- or postpetition: the accrual test;[7] the conduct test;[8] the relationship test;[9] and the fair contemplation or foreseeability test.[10] *Id.* Analyzing the FSA loan under the four tests yields the following results:

| Test | Discussion |
| --- | --- |
| Accrual | Debtors' liability for the loan accrued in 2010 when they borrowed the money and signed the promissory note |
| Conduct | The conduct giving rise to the liability occurred on or about November, 2010 |
| Relationship | The "relationship" giving rise to the debt was formed in November 2010 or before. |
| Fair contemplation/foreseeability | Debtors and FSA knew that the debt would arise as soon as the money was borrowed and the note signed. |

---

[7] *See, e.g., Avellino & Biens v. Frenville Co., Inc. (In re Frenville Co., Inc.)*, 744 F.2d 332, 337 (3d Cir. 1984), overruled by *JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010) (when did the liability accrue under applicable law?).
[8] *See, e.g., Grady v. A.H. Robins Co. (In re A.H. Robins Co.)*, 839 F.2d 198, 203 (4th Cir. 1988) (did the liability arise from conduct that occurred primarily prepetition?).
[9] *See, e.g., United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1005 (2d Cir. 1991) (did the liability arise out of a prepetition relationship between the parties?).
[10] *See, e.g., In re National Gypsum Co.*, 139 B.R. 397, 408 (N.D. Tex. 1992) (could liability arising from prepetition conduct have been fairly contemplated by the parties?).

Regardless of the test used, the result is the same: the debt arose prepetition. Tenth Circuit case law supports this conclusion. In *Myers* the Tenth Circuit held:

> A debt arises prepetition under the first element of § 553 when liability has attached to the debt (i.e., when an enforceable right to payment exists) at the time the debtor files for bankruptcy regardless of whether the debt is unmatured, contingent, or unliquidated. *Id.; see also* 11 U.S.C. §§ 101(12), (5)(A).

362 F.3d at 673-74; *see also Farmers Home Administration v. Buckner (In re Buckner)*, 218 B.R. 137, 147 (10th Cir. BAP 1998) (if liability for a debt attached prepetition, even for an unascertained amount, it is prepetition and subject to setoff). This "attachment" test appears to be a variant of the accrual test.

Cases from other jurisdictions also support the conclusion that the FSA loan arose prepetition. *See, e.g., Traders Bank of Kansas City v. Stonitsch (In re Isis Foods, Inc.),* 24 B.R. 75 (Bankr. W.D. Mo. 1982):

> It is patent law on the issue of setoff, however, that "the right of setoff may be asserted in the bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated. Nor is it necessary that the debt sought to be setoff be due when the case is commenced." 4 Collier on Bankruptcy para. 553.10(2), pp. 553-49, 553-50 (1982). In this case, in which there can be no question about the existence of the debt, and the fact that it was "absolutely owing," albeit as yet unmatured, the bank's right of setoff must be regarded as manifestly present.

24 B.R. at 76; *CDI v. U.S. Electronics, Inc. (In re Communication Dynamics, Inc.),* 382 B.R. 219, 234 (Bankr. D. Del. 2008) (many courts have held that a contingent claim based on a written agreement arises when the agreement is signed, even where the breach occurred later); *In re Young*, 144 B.R. 45, 46 (Bankr. N.D. Tex. 1992) (a debt is prepetition if, on the petition date, it is owing but not presently due); *Rozel Indus., Inc. v. I.R.S. (In re Rozel Indus., Inc.)*, 120 B.R. 944, 949 (Bankr. N.D. Ill. 1990) (not required that the amount be currently due, only that some definite liability has accrued).

E. <u>FSA Cannot Set Off its Postpetition Debt With Its Prepetition Claim</u>.

Debtors' obligation to FSA arose prepetition, while FSA's obligation to Debtors arose postpetition. FSA therefore cannot offset the debts and keep a portion of the subsidy payments.

### III  CONCLUSION

Had Debtors borrowed the $300,000 from FSA postpetition and then defaulted, FSA would have been within its common law rights to set off the subsidy payments it owes to Debtors. Conversely, had the subsidy payments accrued prepetition, FSA could have exercised its setoff rights preserved by § 553(a). As it is, FSA cannot exercise setoff and must turn the subsidy payments over to Debtors. The Court will enter a separate order requiring turnover of the funds at issue.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 19, 2020
Copies to: electric notice recipients